UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

AMBER MOFFETT,

                               *Plaintiff*,

                      *- against -*

NYU LANGONE HEALTH SYSTEM,

                              *Defendant*.

-----------------------------------------------------------------------X

Case No.

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff, AMBER MOFFETT, (hereinafter "Plaintiff"), by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of Defendant, NYU LANGONE HEALTH SYSTEM ("Defendant"), upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to **Title VII of the Civil Rights Act of 1964**, as amended, 42 U.S.C. § 2000e *et. seq*. ("Title VII"), the **New York State Human Rights Law**, (New York State Executive Law § 296, *et seq.)* ("NYSHRL"), and the **New York City Administrative Code,** § 8-107, et seq. ("NYCHRL") seeking damages to redress the injuries she has suffered as a result of being **discriminated and sexually harassed** and subjected to a **hostile work environment** based on her sex/gender.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 2000(e), *et seq.*

3. The Court has supplemental jurisdiction over all state and city law claims pursuant to 28 U.S.C. §1367.

4.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of
       the actions or omissions giving rise to the claims for relief, occurred within this judicial
       district.

## PROCEDURAL PREREQUISITES

5.     Plaintiff filed a charge of discrimination upon which this Complaint is based with the Equal
       Employment Opportunities Commission ("EEOC").

6.     Plaintiff received a Notice of Right to Sue from the EEOC, dated 09/07/2022, with respect
       to the instant charges of discrimination.  A copy of the Notice is annexed to this Complaint.

7.     This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

## PARTIES

8.     At all relevant times herein, Plaintiff is a resident of the State of New York, Kings County,
       and was and is a "person" and an "employee" entitled to protection as defined by the federal
       and state laws invoked herein.

9.     At all relevant times herein, Defendant was and is a domestic not for profit corporation
       with a place of business in the State of New York, County of Kings.

## MATERIAL FACTS

10.    In or about November 2018, Plaintiff started working for the Defendant as a Patient
       Services Associate at their  medical facility located at 150 55th Street, Brooklyn, New
       York.  Plaintiff earns about $45,339.60 annually.

11.    Plaintiff at all times relevant hereto met Defendant's reasonable performance expectations.

12.    In January 2021, Reginald Pressior ("Pressior") became Plaintiff's direct supervisor.
       Shortly thereafter. Pressior began to harass and discriminate against Plaintiff.

13. Pressior engaged in a series of actions towards Plaintiff, first pressuring her to engage in a personal relationship with him, and then retaliating against her when she made it clear she was disinterested in such a relationship.

14. On or about February 20, 2021, Pressior repeatedly came up behind Plaintiff while she was sitting at her desk to converse with her in a flirty manner. Specifically, Pressior spoke about African-Americans and Puerto Ricans "procreating." Pressior's behavior again made Plaintiff uncomfortable.

15. On or about March 2, 2021, Pressior more openly engaged in flirty and inappropriate conversation with Plaintiff. Pressior told Plaintiff that her green eyes were pretty and piercing and that he liked it when Plaintiff wore her hair in a natural style. Pressior also said to Plaintiff that her parents did a "good job" in reference to her looks. Pressior further said that he loves his "Ricans," and made another reference to Plaintiff being of "mixed" race.

16. In response to Plaintiff's lack of interest in Pressior's flirtations, Pressior assigned Plaintiff to cover two critical areas in the emergency room for several hours, only rescinding this assignment when informed that it was delaying patient care.

17. On or about March 18, 2021, in a veiled threat to Plaintiff, Pressior told Plaintiff about another co-worker's impending disciplinary action. Pressior told Plaintiff the employee had "jinxed" herself and that he did not want her to make the same mistake. Shortly after this conversation, one of Plaintiff's male co-workers brought her a cup of coffee, to which Pressior responded, "so that's who does all your coffee runs?"

18. On or about March 31, 2021, Pressior approached Plaintiff, told her he was about to ask her something that might not be appropriate and then inquired as to how her schooling was

going.  Plaintiff responded that it was fine. Pressior then asked Plaintiff if she wanted to go to his office to get her new work ID. Plaintiff refused as she felt this was a ruse to get her to spend time alone with him.

19.   Afterwards Plaintiff spoke with two other employees, who both advised her that Pressior had not asked them to go to his office to get their IDs.

20.   Later the same day, as Plaintiff was leaving work Pressior followed her and asked her if she had sent him her patient secure scores. When Plaintiff told Pressior she had not done so, he began to yell at her. Pressior then followed her back to her desk and demanded that she register an incoming patient. However, as she started to do so, Pressior yelled at Plaintiff asking why she was opening the registration.

21.   Plaintiff finished sending the email Pressior just to have him follow her to the area where employee clocked out for the day. Only after a co-worker distracted Pressior was Plaintiff able to leave without interference.

22.   On or about April 1, 2021, Pressior called Plaintiff into his office, ostensibly to discuss her attendance, but instead admonished her for being "standoffish" with him. When Plaintiff responded neutrally to this remark, Pressior again began to yell at Plaintiff, saying to her, "what the hell, Amber, give me more give me something."  Plaintiff asked Pressior to stop yelling at her, said she was not his friend, and that she was leaving his office because the conversation was no longer work related.

23.   Following this incident, on the same day, Plaintiff spoke to a union delegate, telling the delegate that Pressior was making her uncomfortable. The delegate suggested a meeting between himself, Plaintiff and Pressior.

24. On or about April 13, 2021, Pressior told Plaintiff he was going to "wear her down eventually." This comment caused Plaintiff to experience anxiety such that it was necessary for her to seek medical attention.

25. On or about April 30, 2021, Pressior again came behind the desk into Plaintiff's work area and stood close behind her. Plaintiff asked Pressior to move away from her. Pressior refused, insisting that he did not have to move and remained where he was for several minutes.

26. On or about July 27, 2021, Pressior called Plaintiff into his office and falsely accused her of refusing a doctor's request for a particular task. Plaintiff denied the accusation, advised Pressior to check with the doctor as to whether this happened. Pressior left, then returned, stating that he had confirmed that Plaintiff had not committed the infraction.

27. A few days later, notwithstanding Pressior's own confirmation that his accusation was false, Pressior pressed Plaintiff about the alleged incident with the doctor, telling her to be honest and she would not get into trouble.

28. On or about July 30, 2021, following Plaintiff experienced side effects from her second dose of the COVID-19 vaccine and told Pressior that she needed to leave work. Pressior told Plaintiff she was putting him in a bad spot and instructed her to wait to leave. Pressior eventually permitted Plaintiff to leave but told her that leaving was a "huge ask."

29. On August 12, 2021, Plaintiff sent an email to Defendant's compliance office complaining about Pressior's behavior.

30. Plaintiff was told this was not a compliance issue and that her complaint would be forwarded to Human Resources.

31.    On or about August 20, 2021, David Velasquez ("Velasquez"), Director, contacted Plaintiff and asked her to meet with him privately.

32.    Later that day, Plaintiff met with Velasquez and another Director, Gladys Colon ("Colon"). At the meeting, Plaintiff provided them with examples of Pressior's harassment, as well as witnesses to his conduct.

33.    Approximately one week later, on August 27, 2021, Plaintiff met again with Velasquez and Colon, who informed her that their investigation was complete and that they did not find any wrongdoing. Velasquez and Colon claimed Plaintiff might have "misinterpreted things."

34.    On September 14, 2021, Pressior added Plaintiff to a group chat wherein Pressior was flirting with a nurse. Upon noticing the manner of conversation, Plaintiff left the chat.

35.    Plaintiff subsequently made another complaint to Defendant through its website on September 16, 2021.

36.    On September 22, 2021, Plaintiff sent an email to Melissa Greiner ("Greiner"), an employee in Defendant's Human Resources department, telling Greiner that no one was taking her complaints seriously.  Plaintiff never received a response to the e mail.

37.    The next day, September 23, 2021, Pressior assigned Plaintiff a massive amount of work, exceeding anything he had assigned to any other employee.

38.    On September 27, 2021, Plaintiff was invited to discuss her complaints with Shellie-Ann Proutie ("Proutie"), another employee in Defendant's Human Resources department.

39.    Plaintiff spoke with Proutie on September 29, 2021 about her harassment complaints, and provided Proutie with a list of witnesses. Plaintiff was told that the matter would be investigated.

40.     On or about October 6, 2021, Pressior repeatedly came into the registration office where Plaintiff was working alone, stood directly in front of Plaintiff's desk, and refused to move away. Pressior made a veiled threat to Plaintiff that he had been rewinding cameras and watching where people were a lot lately.

41.     On October 22, 2021, Plaintiff again reached out to Greiner and Proutie and was told that Proutie had spoken with Plaintiff's management team. Plaintiff advised Proutie that Pressior had, that day, attempted to taunt Plaintiff and raised his voice to her in front of another employee.   Plaintiff reported that she had told Pressior that his behavior was retaliatory, to which he responded, "okay, and?" Plaintiff also advised that on the day prior to this conversation, she had met with Velasquez and a union delegate, wherein the delegate asked Velasquez to instruct Pressior to leave Plaintiff alone.

42.     To date, Defendant has failed to take any action to correct or address Pressior's harassment of Plaintiff.

43.     Defendant's failure to exercise reasonable care and to take appropriate remedial action in response to Plaintiff's harassment complaints have caused Plaintiff emotional and physical distress.

44.     Plaintiff has been unlawfully discriminated against and subjected to a hostile work environment, and as a result, suffers a loss of rights, and emotional distress.

45.     As a result of Defendant's actions, Plaintiff feels extremely humiliated, offended, disturbed, degraded, victimized, embarrassed, and emotionally distressed by the blatantly unlawful and discriminatory conduct.

46.     Defendant's actions and conduct were intentional and intended to harm Plaintiff.

47.     Defendant's conduct has been malicious, willful, outrageous, and/or reckless and

conducted with full knowledge of the law. As such, Plaintiff demands punitive damages against Defendant.

### AS A *FIRST* CAUSE OF ACTION FOR DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

48.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

49.     Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(1) provides, in pertinent part, that:

> It shall be an unlawful employment practice for an employer to … discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, *sex*, or national origin.

50.     Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq*., by discriminating against Plaintiff because of her sex/gender.

51.     Plaintiff was victimized and subjected to a hostile work environment and/or a workplace that was permeated with unwanted sexual advances, inappropriate sexual comments, humiliation, retaliation, hostile environment and adverse employment actions  based solely on her sex/gender.

52.     When Plaintiff complained to Defendant's management of Defendant Pressior's sexual harassment, Plaintiff's environment became more hostile.

53.     Defendant ignored and minimized Plaintiff's complaint and/or denied her protection against the hostile environment she faced daily.

54.     As a result of Defendant's actions, Plaintiff was humiliated, degraded, victimized, embarrassed, and emotionally distressed.

55.     As a result of the acts and conduct complained of herein, Plaintiff has suffered emotional pain, inconvenience, wrongful exclusion, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

56.     Defendant's conduct was malicious, willful and conducted with full knowledge of the law.

57.     Plaintiff is entitled to the maximum amount allowed under this statute/law.

**AS A *SECOND* CAUSE OF ACTION FOR DISCRIMINATION
UNDER THE NEW YORK HUMAN RIGHTS LAW**

58.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

59.     New York State Executive Law § 296(1)(a) provides that, "It shall be an unlawful discriminatory practice for an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, …. to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

60.     As described above, Defendant engaged in unlawful employment practices by discriminating against Plaintiff solely based on her gender and for allowing a work environment to exist wherein Plaintiff was subjected to a hostile work environment as a result of her sex/gender and for engaging in protected activity.

88.     Plaintiff was the victim of sexual harassment, discrimination, verbal abuse, unwanted sexual advances, inappropriate sexual comments, humiliation, wrongful accusations of misconduct, abuse, retaliation, and adverse employment actions based solely on her sex/gender.

89.     Because of the acts and conduct complained of herein, Plaintiff has suffered emotional pain, mental distress, suffering,          inconvenience, loss of enjoyment of life, and other

non-pecuniary losses.

90.     Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

91.     Plaintiff is entitled to the maximum amount allowed under this statute/law.

### AS A *THIRD* CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY HUMAN RIGHTS LAW

92.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

93.     New York City Administrative Code §8-107(1) provides that

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

94.     Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her gender.

### PRAYER FOR RELIEF

95.     Plaintiff hereby demands a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A.      Declaring that Defendant engaged in unlawful employment practices prohibited by **Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law,** in that Defendant discriminated against Plaintiff on the basis of her sex (female) by subjecting Plaintiff to a hostile work environment.

B.      Awarding damages to Plaintiff for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendant's unlawful employment practices, and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.      Awarding Plaintiff compensatory damages related to injuries suffered as per Plaintiff's State-law and city claims;

D.      Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

E.      Awarding Plaintiff punitive damages;

F.      Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

G.      Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: Garden City, New York
          December 5, 2022

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

By:      _____/s/_____
          Marjorie Mesidor
          Joseph Myers
          **Phillips & Associates, PLLC**
          *Attorneys for Plaintiffs*
          585 Stewart Avenue, Suite 410
          Garden City, New York 11530
          T: (212) 248-7431
          F: (212) 901-2107
          mmesidor@tpglaws.com
          jmyers@tpglaws.com